UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-22998-Civ-SEITZ
MAGISTRATE JUDGE P.A. WHITE

JAVIER GONZALEZ,                    :

    Petitioner,                 :

v.                                  :        REPORT OF
                                             MAGISTRATE JUDGE
WALTER A. McNEIL,[1]                :

    Respondent.                 :

_____

I. Introduction

Javier Gonzalez, a state prisoner currently confined at Walton Correctional Institution at Defuniak Springs, Florida, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 in this Court, attacking his convictions entered in Miami-Dade County Circuit Court Case No. 99-43500.

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

For its consideration of the petition, the Court has the petitioner's responses to orders regarding the limitations period with supporting exhibits, and the respondent's responses to an order to show cause and supplemental order to show cause with multiple exhibits.

_____

[1]Walter A. McNeil, has replaced James R. McDonough as Secretary of the Florida Department of Corrections, and is now the proper respondent in this proceeding. McNeil should, therefore, "automatically" be substituted as a party under Federal Rule of Civil Procedure 25(d)(1). The Clerk is directed to docket and change the designation of the Respondent.

## II. Claims

Gonzalez raises the following grounds for relief:

1. The evidence admitted at trial was insufficient to sustain his conviction of burglary while armed in that the state failed to prove beyond a reasonable doubt that a dangerous weapon was used during the burglary.

2. He received ineffective assistance of trial counsel, because his lawyer conceded his guilt on an essential element of the burglary offense (i.e., that he was on the subject property) without first having consulted with him.

3. He received ineffective assistance of trial counsel, because his lawyer did not object to an improper jury instruction regarding lesser included offenses.

4. He received ineffective assistance of trial counsel, because his lawyer failed to challenge as unlawful his life sentence as a prison releasee reoffender.

5. He received ineffective assistance of trial counsel, because his lawyer failed to support with any credible evidence his theory of defense that he had been on the subject property for a lawful reason.

## III. Procedural History

This case has a long and tortuous procedural history in both this Court and the state courts which can be summarized as follows. Gonzalez was charged by information filed on February 8, 2000, with one count of burglary of a dwelling with assault while armed with a dangerous weapon, a screwdriver (Count 1) and possession of burglary tools, a screwdriver (Count 2). (Respondent's Appendix at 1-2)(DE# 14). After jury trial, Gonzalez was convicted of burglary of a dwelling without an assault while being armed, designated as a lesser included offense, and possession of burglary tools. Id. at 3-5. Gonzalez was sentenced as a prison releasee reoffender to a term of life imprisonment on the burglary conviction and as a habitual felony offender to a ten-year term as to the possession of burglary tools conviction. Id. at 7-9. Gonzalez prosecuted a direct

appeal from his convictions, raising the following two claims: (1) the conviction on Count 1 should be reduced to simple burglary as it was not proven that the screwdriver was a dangerous weapon (claim one of the instant petition); and (2) the conviction on Count 2 should be reversed as the screwdriver was not used to commit a burglary. Id. at 10-24. In a written opinion, the Florida Third District Court of Appeal found that there was no evidence that Gonzalez used the screwdriver, or intended to use it, to commit a burglary or trespass. See Gonzalez v. State, 841 So.2d 650, 652-53 (Fla. 3 DCA 2003). Accordingly, the appellate court reversed Gonzalez's conviction for possession of a burglary tool, and remanded the case to the trial court to vacate the sentence on that charge. Id. at 652-53. The court affirmed the burglary conviction and life sentence. Id. at 651-52. The Florida Supreme Court denied Gonzalez's petition for discretionary review. (Respondent's Appendix at 59). See also Gonzalez v. State, 869 So.2d 539 (Fla. 2004)(table).

While his case was pending before the Florida Supreme Court, Gonzalez filed in the Florida Third District Court of Appeal a pro se petition for writ of habeas corpus, as amended, alleging that he received ineffective assistance of appellate counsel on direct appeal because his lawyer failed to raise as an issue that he had been convicted of a lesser included offense that was not a true lesser included offense in that it carried the same punishment was the charged offense. (Respondent's Appendix at 60-75). After a response had been filed by the state, the petition was denied without explanation. Id. at 76. Gonzalez next filed a pro se motion for postconviction relief pursuant to Fla.R.Crim.P. 3.850, challenging the lawfulness of his conviction and prison releasee reoffender sentence on the grounds raised here as claims two, three, four and five. Id. at 77-101. The state filed a thorough

response, addressing each claim presented and arguing that Gonzalez was not entitled to postconviction relief on his claims in that they were meritless. <u>Id</u>. at 102-112. The trial court summarily denied the motion in a written order in which the court agreed with the state that Gonzalez's ineffective assistance of trial counsel claims lacked merit pursuant to <u>Strickland v. Washington</u>, 466 U.S. 667 (1984) and his related challenges to his conviction and sentence were meritless pursuant to various state law principles. <u>Id</u>. at 113-14. Gonzalez did not prosecute a timely appeal from the trial court's ruling. However, he was permitted to seek belated appellate review of the trial court's order denying his Rule 3.850 motion. <u>See</u> <u>Gonzalez v. State</u>, No. 3D06-1013, 3D06-1301; <u>Gonzalez v. State</u>, 928 So.2d 1233 (Fla. 3 DCA 1006). <u>See also</u> http://www.3dca.flcourts.org.[2] The trial court's ruling was ultimately <u>per</u> <u>curiam</u> affirmed in a decision without written opinion. <u>Gonzalez v. State</u>, 937 So.2d 672 (Fla. 3 DCA 2006)(table).

After Gonzalez's motion for rehearing was denied and after the mandate had issued, Gonzalez then came to this Court filing the instant <u>pro</u> <u>se</u> petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 on December 3, 2006.[3] The respondent filed a response to the order to show cause, solely asserting that this petition should be dismissed  as untimely filed pursuant to 28 U.S.C. §2244(d). The undersigned entered a report, recommending that this

---

[2]The Court takes judicial notice of information available at the database maintained by the Clerk of Court, Third District Court of Appeal of Florida, http://www.3dca.flcourts.org, viewed on this date. <u>See</u> <u>Fed.R.Evid</u>. 201.

[3]The Eleventh Circuit recognizes the "mailbox" rule in connection with the filing of a prisoner's petition for writ of habeas corpus. <u>Adams v. United States</u>, 173 F.3d 1339 (11 Cir. 1999)(prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing). (Petition at 14)(DE# 1).

petition for writ of habeas corpus be dismissed as time-barred (DE# 16), and Gonzalez filed objections to the Report in which he maintained that his late-filing should be excused based upon the doctrine of equitable tolling. See Objections to Magistrate's Report and Recommendation. (DE# 19).

Specifically, Gonzalez contended that he could not timely pursue state appellate proceedings from the denial of his Rule 3.850 motion and then timely federal habeas corpus relief, because the state trial court improperly failed to send him a copy of the trial court's order of the denial of his Rule 3.850 motion. Id. at 4-7. In support of his claim, Gonzalez essentially maintained that he had inquired in writing to the trial court regarding the status of his Rule 3.850 motion and that he had also requested his then-girlfriend to visit the state trial court to determine the status of his pending motion. Id. Gonzalez indicated that while his girlfriend was unable to personally visit the courthouse, she telephoned the court and was told that Gonzalez's motion was pending and was assured that Gonzalez would be sent a copy of the ruling as soon as it was entered by the court. Id. Gonzalez asserted that when he received no ruling, he pursued state mandamus relief and then the belated appellate proceedings followed. Id. At the time of the issuance of the Report and the filing of objections, Gonzalez had not supported his equitable tolling argument with any evidence whatever.

After independent review of the file and consideration of the objections in light of the Eleventh Circuit's decision in Knight v. Schofield, 292 F.3d 709 (11 Cir. 2002)(holding that a petitioner was entitled to equitable tolling of the AEDPA's statute of limitations because, despite his diligence, he did not learn about the state court's disposition of his state habeas corpus petition

until eighteen months after the petition had been denied), the Honorable Patricia A. Seitz, United States District Judge, entered an order remanding the case to the undersigned to permit Gonzalez additional time to obtain support for his equitable tolling argument, such as, appropriate mailing logs from the Department of Corrections and an affidavit from his girlfriend, describing the circumstances surrounding her communication with the clerk of court regarding Petitioner's Rule 3.850 motion. (Order Remanding Matter to Magistrate Judge)(DE# 20). In order to resolve the timeliness issue, orders were entered by the undersigned, requiring the petitioner to support his equitable tolling argument with appropriate documentation. (DE# 21, 23).

In response to the orders, Gonzalez submitted a letter from Senior Mailroom Clerk of Century CI dated April 18, 2006, and a purported letter written from his friend Norma Gonzalez dated February 15, 2005.[4] (DE# 22, 24). The letter from the mailroom clerk indicates that Gonzalez received no legal mail for the months of March and April 2005, supporting Gonzalez's assertion that he never received a copy of the trial court's order, denying his Rule 3.850 motion. While it appears that Gonzalez is unable to provide this Court with an affidavit from his friend Norma Gonzalez and the pertinent outgoing mail log, as ordered,[5] which documents certainly would further strengthen the record, the record now includes sufficient documentation which arguably supports

---

[4]The letter submitted by Gonzalez is written in Spanish. To assist the undersigned, the letter was translated into English by court personnel, although not by a certified Spanish-language interpreter. For purposes of the proceedings at this time, the informal translation is sufficient.

[5]Petitioner states in his responses that efforts to contact Norma Gonzalez have proved unsuccessful and he has, therefore, been unable to obtain her affidavit detailing her communication with the Clerk, Miami-Dade County Court regarding his Rule 3.850 motion. (Petitioner's Response to Court Orders)(DE# 22, 24). Further, the outgoing mail log is no longer available in that the prison maintains the logs for only one-year. (DE# 24 at Attachment B).

Gonzalez's reliance on the doctrine of equitable tolling to justify the late-filing.

From review of the record in this case and applicable law, it appears that this may be one of those rare cases in which equitable tolling is appropriate. See Knight v. Schofield, 292 F.3d 709, 711 (11 Cir. 2002)(holding that a lengthy delay between the issuance of a necessary order and an inmate's receipt of it might provide a basis for equitable tolling if the petitioner has diligently attempted to ascertain the status of that order and if the delay prevented the inmate from filing a timely federal habeas corpus petition). See also Jenkins v. Johnson, 330 F.3d 1146, 1155 (9 Cir. 2003)(remanding for a determination of whether equitable tolling should be applied where state court's clerk's office mistakenly failed to send notice to counsel, the delayed notice involved only four months, and state remedies were pursued "as expeditiously as practically possible"); Miller v. Collins, 305 F.3d 491, 495-96 (6 Cir. 2002)(holding pro se petitioner entitled to equitable tolling for period between date state habeas petition was denied and date petitioner had notice of denial); Woodward v. Williams, 263 F.3d 1135, 1143 (10 Cir. 2001)("[A] prisoner's lack of knowledge that the state courts have reached a final resolution of his case can provide grounds for equitable tolling if the prisoner has acted diligently in the matter."); Phillips v. Donnelly, 216 F.3d 508, 511 (per curiam)(explaining that a delay in receiving notice of denial of appeal might render equitable tolling appropriate), reh'g granted in part, 223 F.3d 797 (5 Cir. 2000). But see Drew v. Department of Corrections, 297 F.3d 1278, 1286-92 (11 Cir. 2002)(finding that habeas petitioner did not act with due diligence in attempting to ascertain status of his first habeas petition, and thus was not entitled to equitable tolling of limitations period).

From the finding that equitable tolling appears appropriate in this particular case, see Knight, 292 F.3d at 711 (noting that "not in every case will a prisoner be entitled to equitable tolling until he receives notice," and that "[e]ach case turns on its own facts"), it follows that the instant petition is not time-barred and the claims need to be addressed on the merits. Based upon this conclusion, the undersigned entered a supplemental order to show cause, requiring the respondent to file a supplemental response addressing on the merits the claims presented in the petition. On January 25, 2008, the respondent filed his supplemental response, addressing on the merits the ineffective assistance of trial counsel claims raised by the petitioner, although as restated claims. (Response to Order to Show Cause)(DE# 29). The respondent has also submitted additional state court records not earlier provided and a copy of the state court trial transcript.(Appendix to Response to Order to Show Cause)(DE# 30). The respondent has, however, completely overlooked claim one of the instant petition, and has provided no discussion whatever as to that ground for relief.[6]

IV. Threshold Issues - Timeliness, Exhaustion and Procedural Bar

The respondent in his supplemental response rightfully does not challenge the timeliness of the instant petition, and for the reasons expressed above, any such assertion would be unavailing. The respondent further correctly concedes that the claims of the instant petition have been properly exhausted before the state courts. See 28 U.S.C. §2254(b)(1) and (b)(1)(A)(A state prisoner's habeas corpus petition "shall not be granted unless it appears

---

[6]While the respondent has not addressed ground one of the instant petition on the merits, or otherwise, the respondent has provided this Court with all pertinent state court documents. Therefore, in the interest of expediency, the Court will address claim one of this federal petition without requiring a further response from the state.

that----the applicant has exhausted the remedies available in the courts of the State....").[7] As indicated immediately above, the respondent has addressed on the merits all exhausted claims, save claim one.

## V. Standard of Review

Turning to a consideration of Gonzalez's federally cognizable claims, Section 104(d) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §2254(d), provides that a prisoner in state custody may not be granted a writ of habeas corpus for any claim that was adjudicated on the merits in state court, unless the decision of the state court was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented" to the State court. 28 U.S.C. §2254(d)(1), (2). See Williams v. Taylor, 529 U.S. 362, 405-06 (2000). See also, Fugate v. Head, 261 F.3d 1206, 1215-16 (11 Cir. 2001).

A state court decision is "contrary to" the Supreme Court's

---

[7]An applicant's federal writ of habeas corpus will not be granted unless the applicant exhausted his state court remedies. 28 U.S.C. §2254(b),(c). A claim must be presented to the highest court of the state to satisfy the exhaustion of state court remedies requirement. O'Sullivan v. Boerckel, 526 U.S. 838 (1999); Richardson v. Procunier, 762 F.2d 429, 430 (5 Cir. 1985); Carter v. Estelle, 677 F.2d 427, 443 (5 Cir. 1982), cert. denied, 460 U.S. 1056 (1983). A petitioner is required to present his claims to the state courts such that they are permitted the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." Picard v. Connor, 404 U.S. 270-275-77 (1971). Exhaustion is ordinarily accomplished on direct appeal. If not, in Florida, it may be accomplished by the filing of a Rule 3.850 motion, and an appeal from its denial; Leonard v. Wainwright, 601 F.2d 807, 808 (5 Cir. 1979), or, in the case of a challenge to a sentence, by the filing of a Rule 3.800 motion, and an appeal from its denial. See Caraballo v. State, 805 So.2d 882 (Fla. 2 DCA 2001). A claim of ineffective assistance of appellate counsel must be raised by petition for writ of habeas corpus in the appropriate district court of appeal. State v. Dist. Ct. of Appeal, First Dist., 569 So. 2d. 439, 442 n.1 (Fla. 1990).

clearly established precedent within the meaning of §2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. Brown v. Payton, 544 U.S. 133, 141 (2005); Williams v. Taylor, 529 U.S. at 405-06. In the habeas context, clearly established federal law refers to the holdings of the Supreme Court's decisions as of the time of the relevant state-court decision. Hall v. Head, 310 F.3d 683, 690 (11 Cir. 2002) citing, Williams, 529 U.S. at 412. However, in adjudicating a petitioner's claim, the state court does not need to cite Supreme Court decisions and the state court need not even be aware of the Supreme Court cases. See Early v. Packer, 537 U.S. 3, 8 (2002); Parker v. Secy of Dept. of Corrections, 331 F.3d 764, 775-76 (11 Cir. 2003). So long as neither the reasoning nor the result of the state court decision contradicts Supreme Court decisions, the state court's decision will not be disturbed.[8] Id. Further, a federal court must presume the correctness of the state court's factual findings. See 28 U.S.C. §2254(e)(1); Putman v. Head, 268 F.3d 1223, 1241 (11 Cir. 2001), cert. denied, 537 U.S. 870 (2002).

## VI. Facts

The facts of this case as summarized by the Florida Third

---

[8]The Eleventh Circuit has continued to stress the importance of the standard established in Section 2254(d), stating that the AEDPA "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." Crawford v. Head, 311 F.3d 1288, 1295 (11 Cir. 2002). Specifically, the AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal 'retrials' and to ensure that state court convictions are given effect to the extent possible under law." Crawford, supra at 1295, quoting Bell v. Cone, 535 U.S. 685 (2002). See also Hawkins v. Alabama, 318 F.3d 1302 (11 Cir.2003)(discussing AEDPA's limits on federal court authority).

District Court of Appeal in its opinion on direct appeal are as follow:

> In the middle of the day, the victim, a 12 year old girl, was getting ready to leave with her mother and went out to her carport intending to wait in the family car. As she approached the car, she saw Gonzalez crouching over inside the open door of a utility room at the rear of the carport, shoving things around with his hands. The utility room door was normally kept closed with a concrete block against the bottom of it to hold it shut, and the yard of the house was fenced and gated, although the record does not establish whether the gate was locked. Gonzalez turned around, approached the victim, and raised a 12-inch long screwdriver from his side as he came around the car. The victim testified Gonzalez had a threatening expression. Scared, and thinking Gonzalez had a machete, she retreated, saying she had to go talk to her mother, and Gonzalez said he was just trying to get out of the rain. As the victim ran inside screaming, "Mommy, he's going to kill me," Gonzalez picked up his own bike, which was on the ground next to the car, and rode away. Mother and daughter ran outside in time to see Gonzalez depart, and later identified him for police who found him on his bike near the house, with the screwdriver. Gonzalez confessed to trespassing.

Gonzalez v. State, 841 So.2d 650, 651 (Fla. 3 DCA 2003).

## VII. Discussion

### A. Sufficiency of the Evidence

Gonzalez alleges in ground one that the evidence admitted at trial was insufficient to sustain his conviction of burglary while armed in that the state failed to prove beyond a reasonable doubt that a dangerous weapon was used during the burglary. In other words, Gonzalez claims that a screwdriver is a "dangerous weapon" only if used as such, and that since the jury acquitted him of assault, the jury necessarily determined thereby that the screwdriver was not used as a dangerous weapon. Thus, Gonzalez argues, he could not have been "armed" especially in light of the lack of evidence that he lunged towards the victim. This claim is meritless.

The standard for review of the sufficiency of the evidence on a petition for federal habeas corpus relief is whether the evidence presented, viewed in a light most favorable to the state, would have permitted a rational trier of fact to find the petitioner guilty of the crimes charged beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979); Smith v. White, 815 F.2d 1401 (11 Cir. 1987). This familiar standard gives full play to the responsibility of the jury to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.[9] See Wilcox v. Ford, 813 F.2d 1140, 1143 (11 Cir. 1987), citing, Jackson v. Virginia, 443 U.S. at 326. This standard of review is equally applicable to direct or circumstantial evidence.[10] Jackson v. Virginia, 443 U.S. at 320; United States v. Peddle, 821 F.2d 1521, 1525 (11 Cir. 1987).

Gonzalez raised the identical claim in the direct appeal proceeding. The Florida appellate court rejected the claim in a written opinion, stating in pertinent part as follows:

> Here, ..., there was a single count for armed burglary with an assault as to which the jury found a lesser included offense, armed burglary without an assault. Whether the evidence is susceptible of inference by the jury that the defendant is

---

[9]In Florida, the test for the sufficiency of the evidence is whether a "rational trier of fact could have found proof of guilt beyond a reasonable doubt." Melendez v. State, 498 So.2d 1258, 1261 (Fla. 1986) (citing Jackson v. Virginia, 443 U.S. 307 (1979)). A defendant who challenges the sufficiency of the evidence admits not only the facts stated and the evidence adduced, but also every reasonable inference to be drawn from the evidence that is favorable to the state. Gant v. State, 640 So.2d 1180, 1181 (Fla. 4 DCA 1994). It is for the jury to decide what inferences are to be drawn from the facts. Taylor v. State, 583 So.2d 323, 328 (Fla. 1991). So long as there is sufficient evidence in the record to support such inferences, the appellate court will affirm the judgment. Adkins v. Adkins, 650 So.2d 61, 62 (Fla. 3 DCA 1994).

[10]Similarly in Florida, the Jackson standard for the sufficiency of the evidence is equally applicable to direct or circumstantial evidence. In Florida, proof based entirely on circumstantial evidence can be sufficient to sustain a conviction provided that other conditions established by Florida caselaw are satisfied. See Orme v. State, 677 So.2d 258, 258-62 (Fla. 1996) and cases cited therein.

guilty of a lesser offense than that charged is a critical evidentiary matter exclusively within the province of the jury. <u>State v. Bruns</u>, 429 So.2d 307, 309 (Fla. 1983); <u>Parker v. State</u>, 330 So.2d 148, 149 (Fla. 2d DCA 1976). A jury's verdict will not be overturned on appeal as long as competent substantial evidence supports it. <u>Hertz v. State</u>, 803 So.2d 629, 646 (Fla. 2001); <u>Kimbrough v. State</u>, 700 So.2d 634 (Fla. 1997); <u>Nelson v. State</u>, 753 So.2d 648 (Fla. 3d DCA 2000).

The jury had the opportunity to see and evaluate Gonzalez, the victim, and the foot-long screwdriver which the victim mistook for a machete. They may have believed that, while Gonzalez brandished the screwdriver in a weapon-like way when he was suddenly discovered, his actions were more directed to escaping the scene than assaulting the victim, and may therefore have exercised "jury lenity" or a "jury pardon" as to the assault. The verdict's purported internal inconsistency thus does not necessarily support Gonzalez's argument that the acquittal on the assault portion of the charge means that the jury found he did not put the victim in fear, and that therefore this screwdriver was not a weapon. At any rate, an underlying finding as to the victim's perceptions does not determine whether the perpetrator was "armed." <u>See, e.g</u>. <u>State v. Baker</u>, 452 So.2d 927 (Fla. 1984)(in armed robbery, the victim may never be aware the that a robber is armed so long as the perpetrator has the weapon in his possession during the offense).

<u>Gonzalez v. State</u>, 841 So.2d 650, 651-52 (Fla. 3 DCA 2003).

Gonzalez was charged with burglary of a dwelling with assault while armed with a dangerous weapon (a screwdriver) pursuant to <u>Fla.Stat</u>. §810.02(2)(a). The jury found Gonzalez guilty of burglary of a dwelling without an assault while being armed pursuant to <u>Fla.Stat</u>. §810.02(2)(b). A person commits a burglary in Florida if he enters or remains in a dwelling, structure, or conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain. <u>See</u> §810.02(1), <u>Fla</u>. <u>Stat</u>. Burglary becomes a felony of the first degree if, "in the course of committing" the burglary offense, the offender:

(a) Makes an assault or battery upon any person; or
(b) Is or becomes armed within the dwelling, structure,

or conveyance, with explosives or a dangerous weapon ...

Fla.Stat. §810.02(2)(a), (b). An act, such as an assault or battery,[11] is committed "in the course of committing" if the act occurs in an attempt to commit the offense or in flight after the attempt or commission of the offense. Fla.Stat. §810.011(4). See also Bradley v. State, 540 So.2d 185, 186 (Fla. 5 DCA 1989).

The Florida courts have held that a screwdriver can constitute a weapon. See Vincente v. State, 669 So.2d 1119, 1120 (Fla. 3 DCA 1996)(holding that evidence was sufficient to find that screwdriver was a deadly weapon where evidence showed that the defendant employed the screwdriver as a knife with which to stab the victim), citing, People v. Simons, 42 Cal.App.4th 1100, 50 Cal.Rptr.2d 351 (1996)(holding that screwdriver exhibited by defendant, while not inherently deadly weapon, constituted "deadly weapon" for purposes of defendant's conviction for exhibiting deadly weapon to prevent arrest, in view of evidence that defendant held police officers at bay with screwdriver and that defendant waived screwdriver in front of police officers, daring them to kill him); Frey v. State, 580 N.E.2d 362, 364 (Ind.Ct.App. 1991)(stating that court looks to whether weapon had actual ability to inflict serious injury under fact situation and whether defendant had apparent ability to injure victim seriously through use of object during crime to determine if object is a weapon and when different conclusions may be reached as to deadly propensities of weapon used by defendant, the issue whether it is "deadly weapon" is question of fact for jury to determine from description of weapon, manner of its use, and circumstances of case).

---

[11]The crime of assault is defined as "an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent." See Fla.Stat. §784.011.

14

As summarized above, the evidence admitted at trial demonstrated that when Gonzalez spotted the victim, he picked up an instrument, which the then-eleven year-old victim believed was a machete, and then turned and approached the victim with his hand raised. The victim testified that she and Gonzalez were approximately four feet apart at the time he advanced towards her and he did so with a threatening expression. The victim testified that she was scared, causing her to back away and run into the house and scream to her mother that the perpetrator was going to kill her. See Trial Transcript at 133-36. (DE# 30; App. T). Based upon the evidence admitted at trial, the jury was properly able to conclude that Gonzalez was armed with a dangerous weapon when he committed the burglary offense, as found by the state appellate court on direct appeal where the identical issue was presented and rejected.[12] See Gonzalez v. State, 841 So.2d at 651-52. Thus, when taken in the light most favorable to the state, the evidence presented at trial, as summarized herein, was ample to have permitted a rational trier of fact to find that Gonzalez had committed the crime of burglary while armed. See Jackson v. Virginia, 443 U.S. 307 (1979). Gonzalez was therefore properly convicted. Jackson v. Virginia, 443 U.S. 307 (1979).

Even if the jury's finding of guilty as to the armed portion of the burglary charge and not guilty of the assault portion of the

---

[12]Federal courts in habeas corpus proceedings are required to grant a presumption of correctness to state court's explicit and implicit findings of fact, if supported by the record. 28 U.S.C. §2254(e)(1); Green v. Johnson, 160 F.3d 1029, 1045 (5 Cir. 1998), cert. denied, 525 U.S. 1174 (1999). The presumption of correctness afforded factual findings of state courts applies equally to factual determinations made by state trial and appellate courts. See Sumner v. Mata, 449 U.S. 539, 547 (1981). Although the Court in Sumner was interpreting Section 2254 as it existed pre-AEDPA, the holding hinged on the fact that no distinction was made between state trial and appellate courts in the pre-AEDPA version of section 2254, a fact which continues to be true of the current version of the statute. See Bui v. Haley, 321 F.3d 1304, 1312 (11 Cir. 2003).

charge could be deemed inconsistent, any such inconsistency does not render the verdict unlawful, warranting federal habeas corpus relief. As pointed out by the state appellate court in the instant case, inconsistent jury verdicts are permitted in Florida "because they can be the result of jury lenity, and therefore do not always speak to the guilt or innocence of the defendant."[13] Gonzalez, 841 So.2d 651 n.1, 651-52, citing, State v. Connelly, 748 So.2d 248, 252 (Fla. 1999); Fayson v. State, 698 So.2d 825, 826-27 (Fla. 1997). Similarly, the federal courts have held that the rendering of inconsistent verdicts has always been an exclusive privilege and prerogative of the jury, and it is not the duty of the court to "unravel the ratiocinations of the jury's collective logic." Odom v. United States, 377 F.2d 853, 857 (5 Cir. 1967). Nor may a court speculate that a verdict may have been the result of compromise, mistake or even carelessness. United States v. Dotterweich, 320 U.S. 277, 279 (1943). "Juries may indulge in precisely such motives or vagaries." Id. Thus, a jury's inconsistent verdicts in a criminal case are not a basis for reversal. See generally United States v. Wright, 63 F.3d 1067, 1073-74 (11 Cir. 1995). Here, the jury's findings are at most factually inconsistent, and not "truly" or legally interlocking inconsistent verdicts requiring acquittal in Florida. The armed portion of the verdict can stand without the assault portion.

---

[13]The one exception to the general rule allowing inconsistent verdicts is when they are "truly" inconsistent on legally interlocking charges, i.e. "those in which an acquittal on *one count* negates a necessary element for conviction on *another count*." Fayson, supra, at 827, quoting Gonzalez v. State, 440 So.2d 514 (Fla. 4th DCA 1983), review dismissed, 444 So.2d 417 (Fla. 1983)(emphasis added). See also State v. Powell, 674 So.2d 731 (Fla. 1996). In Florida, the courts have required consistent verdicts when the underlying felony was a part of the crime charged--without the underlying felony the charge could not stand. State v. Powell, 674 So.2d 731, 733 (Fla. 1996). The jury is, in all cases, required to return consistent verdicts as to the guilt of an individual on interlocking charges. Id. Florida courts have, however, not extended the "true" inconsistent verdict exception to verdicts that are merely factually inconsistent. See State v. Connelly, 748 So.2d 248 (Fla. 1999).

Accordingly, the state appellate court's affirmance of Gonzalez's conviction on direct appeal does not conflict with clearly established federal law and the rejection of the insufficiency of the evidence claim is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Relief must therefore be denied pursuant to 28 U.S.C. §2254(d); <u>Williams v. Taylor</u>, <u>supra</u>.

### B.  <u>Ineffective Assistance of Trial Counsel</u>

Gonzalez alleges that he received ineffective assistance of trial counsel for four enumerated reasons. To prevail on a claim of ineffective assistance, a petitioner must demonstrate both that his attorney's efforts fell below constitutional standards, and that he suffered prejudice as a result.[14] <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Scrutiny of an attorney's performance is highly deferential. Reviewing courts will not second-guess strategic decisions; rather, the attorney's performance is evaluated in light of all the circumstances as they existed at the time of the conduct, and is presumed to have been adequate. <u>Strickland v. Washington</u>, 466 U.S. at 689-90. Strategic choices made after

---

[14]When assessing a lawyer's performance, "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." <u>Chandler v. United States</u>, 218 F.3d 1305 (11 Cir. 2000)(en banc), <u>cert</u>. <u>denied</u>, 531 U.S. 1204 (2001). The court's role in reviewing ineffective assistance of counsel claims is not to "grade a lawyer's performance; instead, [the court] determine[s] only whether a lawyer's performance was within "the wide range of professionally competent assistance." <u>Van Poyck v. Florida Dept. of Corrections</u>, 290 F.3d 1318, 1322 (11 Cir.), <u>cert</u>. <u>denied</u>, 537 U.S. 812 (2002), <u>quoting</u>, <u>Strickland v. Washington</u>, 466 U.S. 668, 690. Review of counsel's conduct is to be highly deferential. <u>Spaziano v. Singletary</u>, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. <u>White v. Singletary</u>, 972 F.2d 1218, 1220 (11 Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); <u>Atkins v. Singletary</u>, 965 F.2d 952, 958 (11 Cir. 1992). A claim of ineffective assistance is a mixed question of law and fact. <u>Strickland</u>, 466 U.S. at 698. The court "may decline to reach the performance prong of the ineffective assistance test if convinced that the prejudice prong cannot be satisfied." <u>Waters v. Thomas</u>, 46 F.3d 1506, 1510 (11 Cir. 1995)(<u>citing</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 697 (1984)).

thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. Id. at 690-91.  For the reasons expressed immediately below, the trial court's determination that Gonzalez was not entitled to postconviction relief on his claims of ineffective assistance of counsel, which decision was affirmed on appeal, was not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.[15] Relief must therefore be denied pursuant to 28 U.S.C. §2254(d). Williams v. Taylor, 529 U.S. 362 (2000).

Gonzalez first claims that his lawyer improperly conceded his guilt on an essential element of the burglary offense (i.e., that he was on the subject property) without first having consulted with him. Gonzalez is not entitled to habeas corpus relief on this claim, although defense counsel did in fact concede that Gonzalez had been on the victim's property and that he was guilty of the misdemeanor offense of trespass. See Trial Transcript at 127-28, 245, 277-78, 287, 289. Conceding a client's guilt can be a reasonable trial strategy. See Florida v. Nixon, 543 U.S. 175 (2004). When counsel's strategy, given the evidence bearing on the defendant's guilt, is in his client's best interest and when the Strickland standard is satisfied, no tenable claim of ineffective assistance remains even where a defendant did not expressly consent

---

[15]The appellate court's decision affirming the denial of Gonzalez's Rule 3.850 motion without written opinion constitutes an "adjudication on the merits," and is thus entitled to deference under the AEDPA for purposes of subsequent federal habeas corpus review. Wright v. Secretary for Dept. of Corrections,278 F.3d 1245 (11 Cir. 2002), cert. denied, 538 U.S. 906 (2003). Gonzalez is only entitled to relief if the state appellate court's rejection of his claims was directly contrary to, or was an unreasonable application of, clearly established federal law. Id. at 1253-56. See also Van Poyck v. Florida Dept. of Corrections, 290 F.3d 1318, 1325 (11 Cir. 2002). For the reasons stated herein, the appellate court's decision affirming the denial of Gonzalez's Rule 3.850 motion on the subject issues was not unreasonable, and he is therefore not entitled to relief in this federal proceeding.

to the strategy. <u>Id</u>.


Review of the trial court proceedings as discussed above demonstrates that defense counsel presented the best possible defense under the circumstances of this case. The challenged remarks did not constitute an *improper* concession of guilt, but were reasonable comments based upon the evidence. The evidence at trial placed Gonzalez inside the residence (i.e., carport and/or utility room) without the permission of the owner. The young victim and mother, owner of the residence, testified that Gonzalez did not have permission to be on the property. It was beyond dispute that entry was gained through a gate onto the property which may or may not have been closed and chained. The young victim testified that when she came into contact with Gonzalez, he told her that he was there to escape the rain. (Trial Transcript at 134). The owner of the property testified that she saw Gonzalez exit the gate of her home and ride off on his bicycle. <u>Id</u>. at 173-74. Also, Detective Lucas, the lead investigator, testified that Gonzalez made a post-arrest statement, after having been advised and waived his constitutional rights pursuant to *Miranda*,[16] admitting to having been on the subject premises. <u>Id</u>. at 208-09. During closing argument, counsel never conceded guilt as to the charged crimes. Rather, counsel asserted that the state had failed to prove that Gonzalez had entered the utility shed with the criminal intent to commit theft and had committed the burglary with an assault while armed. Counsel explained to the jury that Gonzalez was merely waiting out the rain in the victim's carport and that if he was guilty of any crime at all, it was trespass.

---

[16] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

To suggest to the jury that Gonzalez had not been on the premises whatever would have been totally contrary to the overwhelming evidence at trial. Further, in light of the eyewitness testimony, it is apparent that defense counsel's theory was sound, amounting to proper trial strategy. Here, by conceding that a misdemeanor offense of trespass[17] had been committed, defense counsel was able to achieve credibility with the jury, and question other evidence presented by the state regarding intent to steal property and the assault and deadly weapon components of the charge, which he was partly successful. See Harich v. Dugger, 844 F.2d 1464, 1470 (11 Cir. 1988)(stating that competent trial counsel know that reasonableness is absolutely mandatory if one hopes to achieve credibility with the jury), cert. denied, 489 U.S. 1071 (1989), overruled on other grounds, Davis v. Singletary, 119 F.3d 1471, 1482 (11 Cir. 1997). By rejecting the identical claim raised here, the trial court in the Rule 3.850 proceeding found that, albeit implicitly, such a strategy was clearly reasonable under the circumstances of this case.[18]   See McNeal v. Wainwright, 722 F.2d

---

[17]See Fla.Stat. §810.08(1) which defines trespass in a structure or conveyance as follows:

> Whoever, without being authorized, licensed, or invited, willfully enters or remains in any structure or conveyance, or, having been authorized, licensed, or invited, is warned by the owner or lessee of the premises, or by a person authorized by the owner or lessee, to depart and refuses to do so, commits the offense of trespass in a structure or conveyance.

Trespass in a structure or conveyance is a misdemeanor of the second degree, see §810.08(2)(a), unless there is a human being in the structure or conveyance at the time and then the offense is a misdemeanor of the first degree. Fla.Stat. §810.08(2)(b). If the offender is armed with a firearm or other dangerous weapon, or arms himself or herself with such while in the structure or conveyance, the trespass in a structure or conveyance is a felony of the third degree. Fla.Stat. §810.08(2)(c).

[18]As indicated, scrutiny of an attorney's performance is highly deferential. Reviewing courts will not second-guess strategic decisions; rather, the attorney's performance is evaluated in light of all the circumstances as they existed at the time of the conduct, and is presumed to have been adequate. Strickland v. Washington, 466 U.S. 668, 689-90 (1984). Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. Id. at 690-91. Even if in retrospect the strategy

674, 675-76 (11 Cir. 1984)(holding that defense counsel's argument in first-degree murder prosecution without defendant's which suggested that defendant was "at best" guilty of manslaughter was made as a proper tactical decision, not amounting to unconstitutional representation).

It is noted that Gonzalez was clearly aware of trial counsel's strategy, at the very latest by opening statement, and he never voiced any objection to such a strategy. Thus, in this case, Gonzalez agreed with trial counsel's strategy or, at the very least, acquiesced to trial counsel's strategic decision. See Motion for Post Conviction Relief at 5 (stating that "[t]he defendant's theory of innocents (sic) was simply that he was riding his bike down the street (that the victim's house is located on) when it began to rain. The defendant rode his bike through the open gates of the alleged victim's drive-way and under the roof of the car-port to avoid the down-pour.") Consequently, defense counsel did not render constitutionally ineffective assistance of counsel, as alleged in ground two. The fact that the jury chose to find Gonzalez guilty of the burglary offense does not indicate that trial counsel rendered ineffective assistance of counsel. As was the prerogative of the jury, it chose to believe the strong evidence admitted by the state and the testimony of the state witnesses. This Court must defer to the jury's judgment as to the weight and credibility of the evidence.   See Wilcox v. Ford, 813 F.2d 1140, 1143 (11 Cir. 1987).

---

to pursue one line of defense over another appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it. Adams v. Wainwright, 709 F.2d 1443, 1145 (11 Cir. 1983). Accordingly, tactical or strategic choices by counsel cannot support a collateral claim of ineffective assistance. United States v. Costa, 691 F.2d 1358 (11 Cir. 1982);  Coco v. United States, 569 F.2d 367 (5 Cir. 1978).

Gonzalez alleges in ground three that he received ineffective assistance of trial counsel, because his lawyer did not object to an improper jury instruction regarding lesser included offenses. Gonzalez essentially claims that the offense of which he was convicted was not a true "lesser included" offense because it carried the same sentence as the charged offense. He states that the jury, therefore, should not have been instructed that burglary of a dwelling without an assault while being armed was a lesser included offense of burglary with assault while armed and the verdict form should not have so classified the offense as a lesser included offense. See Verdict. (Respondent's Appendix at 3). See also Trial Transcript at 231, 291. Gonzalez maintains that he suffered prejudice from the jury instructions given in that it gave the state an unfair advantage in its attempt to convict him and caused confusion for the jury, thereby, interfering with its pardon power.

The Florida courts have held that one offense cannot be a lesser included offense of another if both carry the same penalty. See, e.g., Nurse v. State, 658 So.2d 1074 (Fla. 3 DCA 1995). Burglary with assault or battery therein while armed is a first-degree felony as is burglary of a dwelling without an assault while being armed. Consequently, this Court finds for purposes of this federal habeas corpus proceeding that defense counsel's performance was deficient regarding the instructions given to the jury and/or the verdict form used in this case when he failed to object or challenge the characterization of the various possible ways in which the jury could have found Gonzalez guilty of burglary. However, that finding notwithstanding, Gonzalez is not entitled to relief on his claim in that he has failed to satisfy the second

prong of *Strickland*, prejudice.[19]

The jury's verdict was clearly consistent with the witnesses' testimony that Gonzalez committed a burglary; that he did not lunge at the victim, resulting in no assault; and that Gonzalez was armed with a weapon (i.e., the screwdriver that he possessed at the time of the criminal incident when he advanced on the victim). The evidence admitted at trial, as reviewed throughout this report, clearly was sufficient to sustain Gonzalez's conviction. See Jackson v. Virginia, 443 U.S. 307 (1979). While the possible options available to the jury were in part incorrectly characterized as lesser included offenses, the jury was properly instructed as to the elements of the crimes and the state's burden of proof. As to Gonzalez's claim that the jury was so confused it was unable to exercise its pardon power, such assertion is frivolous. Defense counsel requested a jury instruction on the truly lesser included offense of trespass, and the jury was advised that if it did not find Gonzalez guilty of the greater offense, it could find him guilty of the lesser included offense of trespass to a structure while armed or trespass to a structure while not being armed. See Trial Transcript at 290-91, 302-03. See also Verdict Form. Of course, the jury was also instructed that it was free to

_____

[19]The performance prong of an ineffective assistance claim need not be discussed when no prejudice has been established. See Brown v. Head, 272 F.3d 1308, 1313 (11 Cir. 2001), cert. denied, 537 U.S. 978 (2002). The prejudice component of the Strickland test for ineffective assistance of counsel requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. 668, 694 (1984). A reasonable probability is one sufficient to undermine confidence in the outcome. Id. at 693-94. It is not enough for the defendant to show that the error had some conceivable effect on the outcome of the proceeding. Id.

find Gonzalez not guilty of any offense if the state had failed to satisfy its burden. (Trial Transcript at 304). <u>See also</u> Verdict Form. Other than finding that no assault had been committed, as was its prerogative, the jury chose not to exercise its pardon power. It is not reasonable to conclude that if the wording "lesser included offenses" had not been used when the trial court instructed the jury or included in the jury verdict form, the outcome of the trial proceeding would have been different. Gonzalez has, therefore, failed to demonstrate that he received ineffective assistance of trial counsel, as raised in ground three.[20] <u>See</u> <u>Strickland</u>, <u>supra</u>.

Gonzalez alleges in ground four that he received ineffective assistance of trial counsel, because his lawyer failed to challenge as unlawful his life sentence as a prison releasee reoffender. He asserts that the state had failed to mention before trial that he was subject to sentencing as a recidivist and that if he had been given notice that he qualified as a PRR he would have more seriously considered plea negotiations. Gonzalez states that his belief that he was to be sentenced pursuant to the state sentencing guidelines was reinforced when the state mentioned to the jury that it was the jury's responsibility to decide guilt or innocence while it was the judge's responsibility to decide the sentence, upon a finding of guilt. The identical claim was raised and rejected by

---

[20]It is noted that "[a]n error in instructing the jury cannot constitute a basis for habeas relief unless the error so infected the entire trial that the resulting conviction violates due process." <u>Jacobs v. Singletary</u>, 952 F.2d 1282, 1290 (11 Cir. 1992)(quotation omitted). "It is not sufficient that the instruction was undesirable, erroneous, or even universally condemned." <u>Id</u>. (quotation omitted). Consequently, alleged errors in a state court's jury instructions form no basis for federal habeas corpus relief unless they are so prejudicial as to render the trial fundamentally unfair. <u>Jones v. Kemp</u>, 794 F.2d 1536, 1540 (11 Cir.), <u>cert</u>. <u>denied</u>, 479 U.S. 965, 107 S.Ct. 466, 93 L.Ed.2d 411 (1986); <u>Bryan v. Wainwright</u>, 588 F.2d 1108 (5 Cir. 1979); <u>Pleas v. Wainwright</u>, 441 F.2d 56 (5 Cir. 1971). A jury charge is adequate if, viewed as a whole, it fairly and correctly states the issues and law. <u>United States v. Russell</u>, 717 F.2d 518, 521 (11 Cir. 1983).

24

the trial court in the Rule 3.850 proceeding where the trial court found the Florida Prison Releasee Reoffender Act constitutional and that Gonzalez did not demonstrate that he was prejudiced by counsel's performance with regard to his enhanced sentence. <u>See</u> Order Denying Motion for Post Conviction Relief at 1.


Review of the record reveals that the state on February 8, 2000, filed its Notice of Defendant's Qualifications as a Prison Releasee Reoffender and Required Sentencing Pursuant to F.S. 775.082, thereby giving notice to Gonzalez that he qualified as a Prison Releasee Reoffender and that upon conviction the state may seek imposition of the mandatory minimum sentence pursuant to <u>Fla.Stat</u>. §775.082. (Record on Appeal at 12)(DE# 30; Ex. A). On February 9, 2000, the state filed its Notice of State's Intention to Seek Enhanced Penalty Pursuant to F.S. 775.084, thereby giving notice to Gonzalez that he qualified for an enhanced penalty pursuant to <u>Fla.Stat.</u> §775.084 as an habitual felony offender. <u>Id</u>. at 11. Trial proceedings commenced on June 25, 2001, and concluded on June 27, 2001. <u>See</u> Trial Transcript. Before sentence proceedings were conducted, the state refiled on October 18, 2001, its earlier notices regarding enhanced sentencing as a habitual felony offender and prison releasee reoffender. (Record on Appeal at 56, 57)(DE# 30; Ex. A). Gonzalez appeared before the court for sentencing on January 10, 2002, during which trial counsel advised the court that he and Gonzalez had been served with copies of the state's notices. (Transcript of sentence hearing conducted on January 10, 2002, at 39)(Record on Appeal). After finding that Gonzalez qualified as a prison releasee reoffender pursuant to applicable Florida sentencing law, the trial court sentenced Gonzalez to the mandatory term of imprisonment of life on the subject burglary conviction.

Thus, contrary to Gonzalez's assertion, both he and his attorneys received notices of the state's intention to seek habitualization well before the sentence proceeding had taken place. Further, pursuant to Florida law, so long as the defendant and his attorney have actual notice of the state's intention to seek habitualization, lack of written notice does not render the sentence unlawful. See Massey v. State, 609 So.2d 598 (Fla. 1992)(holding that, based on the harmless error rule, the statute's requirement of written notice was inapplicable if the defendant and his attorney had actual notice of the state's intention to seek habitualization so as to give counsel an opportunity to prepare for sentencing). See also Rowe v. State, 574 So.2d 1107 (Fla. 2 DCA 1990)(holding that where written notice served only upon the defendant's counsel, no due process violation occurs if the defendant had actual notice), rev. denied, 576 So.2d 290 (Fla. 1991). It is apparent from the sentencing transcripts that actual notice existed here.

Since Gonzalez' sentence was lawfully imposed pursuant to Florida sentencing law, no due process violations or facts indicating such violations have been demonstrated. The  lengthy sentence imposed here was based upon Gonzalez's status as a prison releasee reoffender, which did not permit the court to sentence him to any other sentence than life imprisonment. In other words, Gonzalez has not shown that there existed a reasonable probability that he would not have been sentenced to a different sentence if counsel had performed differently. Accordingly, Gonzalez cannot demonstrate that his sentence was increased by the alleged deficient performance of his attorney. Gonzalez has, therefore, also failed to satisfy the second-prong of Strickland, prejudice. See Strickland v. Washington, supra. See also Glover v. United States, 531 U.S. 198, 200 (2001)(holding "that if an increased

26

prison term did flow from an error [of counsel] the petitioner has established <u>Strickland</u> prejudice"); <u>Spriggs v. Collins</u>, 993 F.2d 85, 88 (5 Cir. 1993)(holding that in the case of ineffective assistance during the punishment phase, prejudice is established if "there is a reasonable probability that but for trial counsel's errors the defendant's non-capital sentence would have been significantly less harsh.")

Further, Gonzalez only alleges that he would have given more consideration to plea negotiations, not that he would have accepted a plea in this case instead of going to trial.[21] The likelihood that Gonzalez would have in fact entered a guilty plea is belied by the record in that he maintained his innocence of the subject crimes throughout the criminal proceedings. Gonzalez's apparent assertion that the jury should have been apprised that if he was convicted he would be subject to a mandatory life sentence and, if so advised, the outcome of the proceeding would have been different is frivolous. As advised by the trial court, a jury is a fact finding body, not a sentencing body. It would have been improper for the jury to be advised of any loss of liberty that the petitioner would have endured as a result of a guilty verdict. Moreover, the state filed a motion in limine to limit any argument from the defense involving sentencing. (Trial Transcript at 122-23). Defense counsel opposed the motion, wanting to mention the potential consequences of a guilty verdict, and counsel's objection was overruled with the state's motion granted. <u>Id</u>.

Gonzalez may also be alleging that his sentence pursuant to

---

[21] It appears that the state had offered Gonzalez a term of imprisonment of fifteen years in exchange for guilty pleas. <u>See</u> Transcript of sentence hearing at 42.

the Florida Prison Releasee Reoffender Act, <u>Fla.Stat</u>. §775.082(9), is unconstitutional in light of <u>Apprendi   v. New Jersey</u>, 530 U.S. 466 (2000)[22] and its progeny because the statute which requires the imposition of a greater term of imprisonment, impermissibly removed from the jury factual determinations as to whether he qualified under the statute. There is no error here. If so, this claim is also meritless. In <u>Almendarez-Torres v. United States</u>, 523 U.S. 224, 243 (1998), the Supreme Court held that a federal sentencing provision which increases the maximum sentence for an alien who illegally enters the United States after being deported does not set out a separate offense, but rather is a penalty provision or sentencing factor for the offense of illegal reentry. The Court in that case noted that "recidivism ... is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence." <u>Id</u>. In <u>Apprendi</u>, the Court declined to overrule <u>Almendarez-Torres</u>, holding that it constituted a "narrow exception" to the rule that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." <u>Apprendi</u>, 530 U.S. at 490. It concluded that its newly-announced rule applies to any fact "other than the fact of a prior conviction." <u>Id</u>. Accordingly, federal courts have repeatedly held that the holding of <u>Almendarez-Torres</u> survived <u>Apprendi</u>. <u>See</u>, <u>e.g.</u>, <u>United States v. Acevedo</u>, 285 F.3d 1010 (11 Cir. 2002); <u>United States v. Anglin</u>, 284 F.3d 407, 408 (2 Cir. 2002).

---

[22]In brief, the United States Supreme Court held in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." <u>Id</u>. at 490. In its later opinion in <u>Blakely v. Washington</u>, 542 U .S. 296 (2005), the Supreme Court explained that under <u>Apprendi</u> "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." <u>Id</u>. at 303-04. In a case decided shortly after <u>Blakely</u>, the Supreme Court explicitly held that <u>Blakely</u> applies to the Federal Sentencing Guidelines. <u>See United States v. Booker</u>, 543 U.S. 220 (2005).

This Court notes that Florida's habitual offender sentencing provisions allow the enhancement of sentences for recidivism, and the Florida courts have repeatedly rejected the similar claim that Florida's habitual felony offender statute, which enhances a sentence for recidivism, is unconstitutional based on Apprendi. See McGregor v. State, 789 So.2d 976 (Fla. 2001). See also Saldo v. State, 789 So.2d 1150 (Fla. 3 DCA 2001); Gordon v. State, 787 So.2d 892 (Fla. 4 DCA 2001); Wright v. State, 780 So.2d 216 (Fla. 5 DCA 2001).[23] Further, the Florida Supreme Court has specifically rejected the claim that the Prison Release Reoffender Act is unconstitutional in light of the Supreme Court's decision in Apprendi. Marshall v. State, 789 So.2d 969 (Fla. 2001). Similarly, the Florida courts have held that for the purpose of applying Apprendi and Blakely, the date of a defendant's release from prison under the prison releasee reoffender statute is analogous to the fact of a prior conviction under the habitual felony offender statute. See Gurley v. State, 906 So.2d 1264 (Fla. 4 DCA 2005).

Gonzalez claims in his final ground for relief that counsel

---

[23]In so holding, the court in Wright stated in pertinent part as follows:

...Defendant argues that under the habitual felony offender statute, the trial judge must not only make a finding of fact that a prior conviction exists, but also must find that the conviction was for a qualified offense committed within five years, was not for a violation of section 893.13, Florida Statutes (1993), and had not been vacated, or the defendant pardoned. Therefore, he concludes that under Apprendi, the statute is unconstitutional.

The United States Supreme Court expressly acknowledged in Apprendi that recidivism is a traditional basis for increasing a sentence and is a fact which does not relate to the commission of the offense before the court. (citation omitted). Nothing in Apprendi overrules the Florida Supreme Court's holding in Eutsey v. State, 383 So.2d 219 (Fla. 1980) that the determination that a defendant could not be sentenced as an habitual felony offender was independent of the question of guilt in the underlying substantive offense and did not require the full panoply of rights afforded a defendant in the trial of the offense.

Wright, 780 So.2d 216, 216-17 (Fla. 5 DCA 2001).

rendered ineffective assistance, because his lawyers failed to conduct an adequate pretrial investigation and support with any credible evidence his theory of defense that he had been on the subject property for a lawful reason. In particular, he alleges that counsel failed to impeach the trial testimony of the mother and daughter, and failed to present him as a defense witness to support the defense theory. This claim is meritless, as refuted by the record.

The adequacy of a pretrial investigation turns on the complexity of the case and trial strategy.[24] Review of the record demonstrates that before trial, his lawyers obtained and reviewed police reports, photographs, the state's witness list, etc. Also, before trial, counsel deposed the daughter, the mother and the detectives that testified at trial. The fact that defense counsel was able to file pretrial motions to suppress Gonzalez's post-arrest statement and identifications made is indicative of such a thorough pretrial investigation. See Motion to Suppress Defendant's Confessions, Admissions and Statements; Motion to Suppress Defendant's Lineup, Showup, Photograph, Other Pre-Trial Confrontation and Courtroom Identification. (Record on Appeal at 13-4, 15-6).

---

[24]Effective assistance of counsel embraces adequate pretrial investigation. See McCoy v. Newsome, 953 F.2d 1252, 1262-63 (11 Cir. 1992) and cases cited therein. Accordingly, "[w]hen a lawyer fails to conduct a substantial investigation into any of his client's plausible lines of defense, the lawyer has failed to render effective assistance of counsel." Id. at 1263, quoting, House v. Balkcom, 725 F.2d 608, 615, 617-18 (11 Cir.), cert. denied, 469 U.S. 870 (1984). It is evident from the record that trial counsel did properly investigate the facts of the case and had investigated all possible defenses. Although counsel has no absolute duty to investigate particular facts or a certain line of defense, a complete failure to investigate may constitute deficient performance of counsel in some circumstances. See Crawford v. Head, 311 F.3d 1288, 1297 (11 Cir. 2002).

Further, based upon the taking of the pretrial deposition, defense counsel was in fact able to impeach several portions of the witness testimony with testimony obtained during the pretrial investigation. For example, the defense theory was that it had been raining at the time of the incident and that Gonzalez had entered the victim's property through an open gate to seek shelter from the rain under the victim's carport. At trial, during direct examination, both the daughter and mother testified that the gate had been closed and the door to the utility room closed and locked with the mother further testifying that the gate had been closed and chained the night before. See Trial Transcript at 144-45, 177-80. Through cross-examination, using the pretrial deposition testimony given, defense counsel was able to point out to the jury that the victim had earlier testified that the gate had been left open and get the mother to admit that maybe the gate had been left open the day of the burglary. See Trial Transcript at 145-49, 155, 156, 163, 164, 185-87. Defense counsel throughout the victim's testimony used her earlier deposition testimony and sworn statement given to the police to point out to the jury that the victim's trial testimony was not reliable. Id. at 149-50, 151-53, 155-61, 161-62. The skillful and thorough cross-examination regarding whether Gonzalez had lunged at the victim was successful in that the jury did not find Gonzalez guilty of committing an assault.

The decision to cross-examine a witness and the manner in which it is conducted are tactical decisions "well within the discretion of a defense attorney." Fugate v. Head, 261 F.3d 1206, 1219 (11 Cir. 2001)(quoting Messer v. Kemp, 760 F.2d 1080, 1090 (11 Cir. 1985)). Trial counsel is not ineffective simply for failing to elicit other testimony from those that testified. Id. at 1220. In this case, other than Gonzalez's unsupported allegations, there is no competent evidence of record that any additional or different

investigation would have provided exculpatory testimony or evidence. The lack of a specific, affirmative showing of any exculpatory evidence leaves Gonzalez's claim purely speculative and well short of the prejudice required by Strickland. Speculation about what witnesses could have said is not enough to establish prejudice. See generally Grisby v. Blodgett, 130 F.3d 365, 373 (9 Cir. 1997). See also White v. Singletary, 972 F.2d 1218, 1220 (11 Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight.")

Gonzalez also maintains that trial counsel improperly deprived him of his right to testify in support of his defense. The record in this case clearly demonstrates that Gonzalez is not entitled to relief on this allegation. As long as an attorney advises a petitioner of his right to testify and does not prevent a petitioner from testifying, his strategic decision not to call petitioner as a witness is entitled to great deference.[25] See Gallego v. United States, 174 F.3d 1196, 1197 (11 Cir. 1999)(noting that ineffective assistance of counsel occurs when "counsel refused

_____

[25]It is well settled that a criminal defendant has a fundamental constitutional right to testify in his or her own behalf at trial. Rock v. Arkansas, 483 U.S. 44, 49-52 (1987); United States v. Teague, 953 F.2d 1525, 1532 (11 Cir. 1992) (en banc). This right is personal to the defendant, and cannot be waived by the trial court or defense counsel. Teague, supra; Brown v. Artuz, 124 F.3d 73, 77-78 (2 Cir. 1997). Thus, every criminal defendant is privileged to testify in his own defense, or refuse to do so. Faretta v. California, 422 U.S. 806, 834 n. 45 (1975), quoting, Harris v. New York, 401 U.S. 222, 225 (1971). The burden of ensuring that a criminal defendant is informed of the nature and existence of the right to testify rests upon trial counsel, and is therefore a component of effective assistance of counsel. Teague, 953 at 1533; Sexton v. French, 163 F.3d 874, 882 (4 Cir. 1998). The proper vehicle for an argument that a defendant's right to testify was violated by his trial counsel is a claim of ineffective assistance of counsel, which requires analysis under Strickland v. Washington, 466 U.S. 668 (1984). Gallego v. United States, 174 F.3d 1196 (11 Cir. 1999)(citing Teague, 953 F.2d at 1534); Brown, 124 F.3d at 79-80; Sexton v. French, 163 F.3d 874, 882 (4 Cir. 1998). United States v. Tavares, 100 F.3d 995, 998 (D.C. Cir.1996).

to accept the defendant's decision to testify and refused to call him to the stand, or where defense counsel never informed the defendant of his right to testify"). Review of the record indicates that after the state had rested and after a motion for judgment of acquittal made, the defense announced that it rested. (Trial Transcript at 231). To ensure that Gonzalez had voluntarily, intelligently and knowingly waived his right to testify in his own defense, Gonzalez was sworn and the trial court conducted the following colloquy with Gonzalez:

| | |
|---|---|
| THE COURT: | Do you understand that under the constitution of our country you have the right to testify if you so choose? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Do you understand that you are waiving that right to testify? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Are you doing that of your own free will? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | No one has pressured you or forced you not to testify? |
| THE DEFENDANT: | No, sir. |
| THE COURT: | And you think it is in your own best interest not to testify? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Any further questions from counsels? |
| MR. BRISABE: | No. |
| MR. QUESADA: | No. |
| THE COURT: | I'm satisfied that [Gonzalez] understands his right and has decided in his best interest, that it is in his own best interest not to testify in this case. |

33

<u>Id</u>. at 232-33.

In this case, after being fully advised of his right to testify, Gonzalez affirmatively stated on the record that he had elected not to testify at trial. This demonstrates his ultimate accord with the defense strategy. Such advice of counsel was clearly reasonable under the circumstances, amounting to proper trial strategy, given the fact that Gonzalez had at the time of trial at least four prior felony convictions which certainly would have been revealed to the jury by the prosecution in an attempt to challenge Gonzalez's credibility.[26] <u>See</u> <u>Strickland</u>, 466 U.S. at 689-91; <u>United States v. Costa</u>, 691 F.2d 1358, 1364 (11 Cir. 1982). Gonzalez has failed to demonstrate that counsel's performance was deficient, as alleged.

Further, it appears that counsel's decision against calling witnesses at trial may have been a strategic decision so that the defense would be afforded both the first and last closing arguments to the jury. This Court must be highly deferential to such strategic decisions of counsel, which decision was clearly reasonable under the circumstances of this case, not amounting to constitutionally ineffective representation.[27] <u>See</u> <u>Kelley v. Secretary for Dept. of Corrections</u>, 377 F.3d 1317, 1353 (11 Cir.

---

[26]In Florida, the prosecutor is allowed to inquire as to the number of prior convictions, although not permitted to ask the defendant to identify the particular crimes for which he was convicted. <u>See</u> <u>Johnson v. State</u>, 380 So.2d 1024 (Fla. 1979). The same is true in federal prosecutions. <u>See</u> <u>United States v. Timblin</u>, 551 F.2d 1001 (5 Cir. 1977). For a more complete listing of Gonzalez's prior convictions, see the records maintained by the Florida Department of Corrections at http://www.dc.state.fl.us/.

[27]It is noted that effective May 3, 2007, the law in Florida has changed in that the statute now provides that in accord with the common law, the prosecuting attorney may open the closing arguments, the defendant or his or her attorney may reply, and the prosecuting attorney may reply in rebuttal. <u>See</u> <u>Fla.R.Crim.P</u>. 3.381. <u>See also</u> In re: Amendments, 957 So. 2d 1164 (Fla. 2007).

2004)(finding petitioner not prejudiced by any deficient performance by counsel where counsel adequately investigated case, and counsel elected, as matter of defense strategy, to not put on defense witnesses so that they might take advantage of state procedural rule allowing defendant to make first and last closing arguments when defense is not presented), cert. denied, 545 U.S. 1149 (2005). Even if this Court were to find that counsel's advice to Gonzalez regarding his right to testify was in someway deficient, Gonzalez has not been prejudiced by the alleged deficient performance of counsel. Through strong cross-examination of the state witnesses, especially the victim, and during an impassioned closing argument, defense counsel vigorously pursued the defense that the state had clearly failed to prove beyond a reasonable doubt that Gonzalez had committed the crimes for which he was charged and was, at most, guilty of simple trespass. As was the prerogative of the jury, it for the most part rejected the defense presented, and instead believed the strong evidence admitted by the state, which included Gonzalez's inculpatory statements and the testimony of the victim and her mother. As mentioned above, this Court must defer to the jury's judgment as to the weight and credibility of the evidence.  See Wilcox v. Ford, 813 F.2d 1140, 1143 (11 Cir. 1987), citing, Jackson v. Virginia, 443 U.S. at 326. Also, in this federal proceeding, Gonzalez has not provided this Court with any specific exculpatory testimony, merely implying that his prospective testimony would have aided the defense. Finally, as indicated throughout, the  evidence of guilt presented at trial was strong. Thus, the alleged deficient performance of counsel did not result in prejudice to Gonzalez. See Brecht v. Abrahamson, 507 U.S. at 623, quoting, Kotteakos v. United States, 328 U.S. 750, 776 (1946).

   In sum, it is clear from the record when viewed as a whole

that the petitioner received representation more than adequate under the Sixth Amendment standard. See Strickland v. Washington, 466 U.S. 668 (1984). Gonzalez has failed to demonstrate that he was deprived of constitutionally effective assistance of counsel for the reasons alleged above. Id.

### VIII. Conclusion

Based upon the foregoing, it is recommended that this petition for writ of habeas corpus be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

SIGNED this 26th day of February, 2008.

_____

UNITED STATES MAGISTRATE JUDGE

cc: Javier Gonzalez, Pro Se
DC# M17315
Walton Correctional Institution
691 World War II Veterans Lane
DeFuniak Springs, FL 32433

Michael C. Greenberg, AAG
Department of Legal Affairs
444 Brickell Avenue
Suite 650
Miami, FL 33131